JOHN T. GORMAN
Federal Public Defender
District of Guam



KIM SAVO
Assistant Federal Public Defender
First Hawaiian Bank Building
400 Route 8, Suite 501
Mongmong, Guam 96910
Telephone:     (671) 472-7111
Facsimile:      (671) 472-7120

Attorney for Defendant
JOSEPH CARLOS TAITANO AGUON

IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR 05-00027 |
| | ) | |
| Plaintiff, | ) | DEFENDANT'S POSITION RE |
| | ) | SENTENCING; DECLARATION OF |
| vs. | ) | COUNSEL; EXHIBITS |
| | ) | |
| JOSEPH CARLOS TAITANO AGUON, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Defendant, JOSEPH CARLOS TAITANO AGUON, by and through counsel, **Kim** Savo,

Assistant Federal Public Defender, respectfully requests this Court to sentence him to a **two-year**

term of probation.

ORIGINAL

## I. INTRODUCTION

On May 8, 2001, Joseph Aguon was a passenger in a vehicle that was stopped by Guam Police Department Officer Quitugua. *See* Offense Report Form, attached as Exhibit A. After searching the vehicle, Officer Quitugua discovered drug paraphernalia. *Id.* Subsequently, Mr. Aguon admitted to being in possession of methamphetamine hydrochloride, known as "Ice," and that he was addicted to it. *See* Aguon Statement, attached as Exhibit B. Mr. Aguon was arrested and charged with possession of a controlled substance. *See* Arrest Record, attached as Exhibit C. He then entered a guilty plea to one count of possession of a schedule II controlled substance as a 3rd degree felony in violation of 9 G.C.A. § 67401.2(a) in Guam Superior Court case number CF431-01. *See* Judgment, attached as Exhibit D. He was sentenced to three years imprisonment to be followed by a three year term of special parole, and a fine of $15,000.00 which was converted to community service.

Also on May 8, 2001, after a further search of the vehicle was conducted, officers found a handgun in the engine compartment of the car in which Mr. Aguon was a passenger. Mr. Aguon admitted to possession of the firearm. Following the search of the vehicle, Mr. Aguon was arrested for possession of a controlled substance, possession of a firearm without a valid firearms identification card, and possession of a concealed weapon. *See* Exhibit C.

It appears that Bureau of Alcohol, Tobacco, and Firearms was almost immediately notified about Mr. Aguon's arrest. The first report of investigation prepared by ATF was made on May 21, 2001. *See* Report of Investigation, May 21, 2001, attached as Exhibit E. The only

2

other report prepared by ATF in this case was made on July 29, 2002. *See* Report of Investigation, July, 29, 2002, attached as Exhibit F.

After serving nearly three years in custody, Mr. Aguon was paroled on July 15, 2004. He has remained drug-free, and has been an exemplary parolee. *See* Decl. of Counsel, at ¶ 4, attached. Mr. Aguon works six days a week doing community service at the San Vicente Church in Barrigada. *Id.* at ¶ 6. His supervisor there, David Cruz, reports that Mr. Aguon is a "great asset to the Church." *Id.* Mr. Aguon is very good at his work, is prompt, and respectful. *Id.* He performs general maintenance, and helps set up for mass and funerals. *Id.*

Mr. Aguon was not indicted in this case until March 23, 2005, nearly one year after his release from custody, and just shy of four years after his arrest.

Mr. Aguon believed that the firearms charge had been dropped by the Attorney General's office because he agreed to plead guilty to the possession of methamphetamine charge. Thus, after serving the majority of his sentence and having been living in the community on parole for nearly a year before he was arrested –not summonsed– in this case, Mr. Aguon was stunned to discover that he was still subject to prosecution.

Mr. Aguon respectfully requests that the Court impose a reasonable statutory sentence in light of his individual characteristics and the nature and circumstances of the instant offense. Mr. Aguon proposes that a two-year term of probation is sufficient but not greater than necessary to achieve the statutory aims of sentencing.

3

## II.    DISCUSSION

The Supreme Court has ruled that the mandatory nature of the federal sentencing guidelines runs afoul of the Sixth Amendment. *United States v. Booker*, 125 S. Ct. 738 (2005). After *Booker*, the sentencing guidelines are "effectively advisory." *Id.* at 757. Courts are now required to consider the guidelines as only one among the other statutory purposes of sentencing in arriving at the appropriate sentence.[1] *Id.* The guidelines are neither the starting point of the court's considerations, nor are they to be weighed more heavily than the other statutory purposes. As the Ninth Circuit has stated the advisory guideline range is "only one of many factors that a sentencing judge must consider in determining an appropriate individualized sentence . . . ." *United States v. Ameline*, 400 F.3d 646, 655-56 (9th Cir. 2005), *reh'g en banc*, 409 F.3d 1073. These "statutory purposes," including the guidelines, are enumerated at 18 U.S.C. §§ 3553(a), 3582(a), and 3661.

---

[1]    "The directives of *Booker* and § 3553(a) make clear that courts may no longer uncritically apply the guidelines and, as one court suggested, 'only depart . . . in unusual cases for clearly identified and persuasive reasons.'" *United States v. Ranum*, 353 F. Supp. 2d 984, 986 (E.D. Wis., Jan. 19, 2005), *citing United States v. Wilson*, 350 F. Supp. 2d 910, 912 (D. Utah, Jan. 13, 2005). The approach espoused in *Wilson* is inconsistent with the holdings of the merits majority in *Booker*, rejecting mandatory guideline sentences based on judicial fact-finding, and the remedial majority in *Booker*, directing courts to consider all of the § 3553(a) factors, many of which the guidelines either reject or ignore. *See United States v. Issa M. Jaber*, 362 F. Supp. 2d 365, 371 (D. Mass, Mar. 16, 2005) ("*Wilson* method comes perilously close to the mandatory regime found to be constitutionally infirm in *Booker*"); *see also United States v. Myers*, 353 F. Supp. 2d 1026, 1028 (S.D. Iowa, Jan. 26, 2005) (Pratt, J.) (agreeing with *Ranum* approach and arguing that the *Wilson* approach is in error because it makes the guidelines, "in effect, still mandatory"); *United States v. West*, 2005 WL 180930 (S.D.N.Y. Jan 27, 2005) (following *Ranum*).

4

The overriding principle and basic mandate of Section 3353(a) requires district courts to impose a sentence "sufficient but not greater than necessary" to comply with the four purposes of sentencing: retribution (to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment), deterrence, incapacitation, and rehabilitation. 18 U.S.C. § 3553(a)(2).

In arriving at the appropriate sentence, section 3553(a) directs the court to consider: (1) the nature and circumstances of the offense and the history and characteristics of the offender,[2] (2) the kinds of sentences available, (3) the guidelines and policy statements issued by the Sentencing Commission, (4) the need to avoid unwarranted sentencing disparity, and (5) the need to provide restitution where applicable. 18 U.S.C. § 3553(a)(1), (a)(3), (a)(5)-(7). Neither the statute nor *Booker* suggest that any single factor is to be given more weight than any other factor. There is no authority in the Ninth Circuit directing district courts to give more weight to the guidelines than to the other statutory factors.

Section 3553(a)(2)(D) requires a sentencing court to evaluate the need to provide the defendant with education, training, treatment or medical care in the most effective manner. This directive might conflict with the guidelines, which in most cases offer only prison. See U.S.S.G.

---

[2]     Under the guidelines, courts are generally forbidden to consider the defendant's age, U.S.S.G. § 5H1.1, his education and vocational skills, § 5H1.2, his mental and emotional condition, § 5H1.3, his physical condition including drug or alcohol dependence, § 5H1.4, his employment record, § 5H1.5, his family ties and responsibilities, § 5H1.6, his socio-economic status, § 5H1.10, his civic and military contributions, § 5H1.11, and his lack of guidance as a youth, § 5H1.12. The guidelines' prohibition of considering these factors cannot be squared with the § 3553(a)(1) requirement that the court evaluate the "history and characteristics" of the defendant. *Id.*

5

§ 5C1.1 (describing limited circumstances in which court can impose sentence other than imprisonment). By enacting section 3582, Congress explicitly recognized that imprisonment is "not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582 (a).

Finally, section 3661 provides that "no limitation shall be placed on the information concerning the background, character, and conduct of the person . . . which a court . . . may consider for the purpose of imposing and appropriate sentence." 18 U.S.C. § 3661. In sum, in every case, courts must now consider all of the statutory factors, not just the guidelines in arriving at the appropriate sentence.

### A.     The Sentencing Factors Weigh in Favor of a Probationary Sentence.

#### 1.     The nature and circumstances of the offense and the history and characteristics of the offender

Mr. Aguon is a life-long resident of Guam. He and his wife have been married for 34 years, and have two sons. PSR at ¶ 45. One son, Tony Aguon is employed by the Guam Civil Service Commission. The other, Troy Aguon, is a construction engineer. *Id.*

Mr. Aguon has been a long-standing productive member of the community. He was employed as a power plant operator by the Guam Power Authority for 20 years. PSR at ¶ 56. But for his methamphetamine addiction, Mr. Aguon has been a law abiding citizen.

At the time he illegally possessed the handgun that is the subject of this case, Mr. Aguon was a methamphetamine addict. He obtained the gun by exchanging drugs for it. His possession of the gun was closely linked to his drug use. Mr. Aguon spent three years in prison as a result of the May 8, 2001 arrest. He has since overcome his addiction. Had ATF pursued this case

6

contemporaneously with the state prosecution for the drug charge, Mr. Aguon would have had the opportunity to serve his state sentence concurrently with whatever federal sentence might have been imposed.

### a. Lost Opportunity for Concurrent Sentence

The Court has the authority to impose a sentence that takes into account the three years Mr. Aguon has already spent in custody as a result of the May 8, 2001 arrest. Even under the mandatory guidelines regime, the Ninth Circuit recognized that a district court had the discretion to grant a downward departure in offense level to account for the lost opportunity to serve state time concurrently with federal time. *See United States v. Sanchez-Rodriguez*, 161 F.3d 556, 563-65 (9th Cir. 1999) (*en banc*) (affirming departure of 3 levels because delay in bringing federal charge prejudiced defendant's opportunity to serve more of his state sentence concurrently with his federal sentence).

Whether the Court opts to account for the time Mr. Aguon spent in state custody by adjusting the advisory guideline range downward, or by weighing it separately as part of the overall section 3553(a) inquiry, the Court should impose a sentence that takes into consideration his lost opportunity to serve his state sentence concurrent with any federal sentence.

### 2. The kinds of sentences available

Congress has expressly recognized that incarceration is not an appropriate means to achieve rehabilitation. The sentencing statutes do not preclude a probationary sentence. Mr. Aguon is currently on parole. He is scheduled to be discharged from parole on July 15, 2007. Mr. Aguon has been extremely successful on parole, remaining drug free and contributing to the

7

community through his service at the church. He has demonstrated that he has rehabilitated himself, and that he can continue to function in the community. A two-year term of probation would coincide with the remainder of Mr. Aguon's parole.

### 3. The advisory guidelines

As a prohibited person in possession of a firearm, Mr. Aguon's base offense level is **14**. *See* U.S.S.G. §2K2.1(a)(6). The guidelines also advise the application of an additional 2 points because the firearm was stolen. *Id.* at §2K2.1(b)(4). Based on his acceptance of responsibility and timely plea, the guidelines advise a 3 point reduction. *Id.* at §3E1.1(a); PSR at ¶ 29. Thus, the total offense level is **13**.

The presentence report assigns Mr. Aguon 6 criminal history points, placing him in a Criminal History Category III. PSR at ¶ 37. Two of those points were assessed on the grounds that Mr. Aguon committed the instant offense while on probation in another case. PSR at ¶ 35.

### a. Preindictment Delay

The government's four year delay in prosecuting this case prejudices Mr. Aguon because he now has 3 criminal history points that he would not have had if he had been prosecuted for this offense when it occurred. Instead, by waiting four years, Mr. Aguon's conviction in August 2001 which arose from the same arrest and the same conduct as that charged here, now subjects him to a higher advisory guideline range. *United States v. Martinez*, 77 F.3d 332, 336-37 (9th Cir. 1996) (recognizing availability of downward departure in criminal history category to reflect delay in indictment). If the government had brought this case at the time of the offense conduct, Mr. Aguon would have had only one conviction for which he served no imprisonment, leading to

8

only 1 criminal history point. Thus, had he been prosecuted in 2001 his advisory guideline range would be based on a Criminal History Category II rather than III.

Using a base offense level of 13 and a Criminal History Category II, the advisory guideline range in this case would be 15-21 months.

This case is a prime example of how the pre-*Booker* mandatory guidelines had the potential to work a real injustice in sentencing. Even if the Court were to grant a "downward departure" under the old regime, the departure would need to be no less than 8 levels to make Mr. Aguon eligible for a straight probationary sentence in "Zone A".

The Court is no longer so restricted in its sentencing function. The Court's mandate is to impose a sentence that is "sufficient but not greater than necessary" to achieve the purposes of sentencing. The three years spent in state custody have already served the goals of retribution and deterrence. A term of incarceration at this late date will not serve to deter illegal conduct because Mr. Aguon is no longer engaged in illegal activity. Imprisonment at this juncture is simply antithetical to the rehabilitative aims of sentencing.

### III.    CONCLUSION

To incarcerate Mr. Aguon now would be to send entirely the wrong message to an individual who has in fact overcome serious drug addiction and who is diligently making efforts to again be a productive member of his community. Incarcerating Mr. Aguon now would be a disincentive to continued rehabilitation. Sending Mr. Aguon to prison would tell him that it does not matter that he has turned his life around.

9

Considering the particular circumstances of the prosecution of this offense, a two-year term of probation is sufficient but not greater than necessary to serve the statutory purposes of sentencing.

DATED: Mongmong, Guam, July 18, 2005.

KIM SAVO
Attorney for Defendant
JOSEPH CARLOS TAITANO AGUON

10

IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CR 05-00027 |
| | ) |
| Plaintiff, | ) DECLARATION OF COUNSEL |
| | ) |
| vs. | ) |
| | ) |
| JOSEPH CARLOS TAITANO AGUON, | ) |
| | ) |
| Defendant. | ) |
| | ) |

I, KIM SAVO, hereby declare as follows:

1.     That I am counsel for defendant, Joseph Carlos Taitano Aguon, having been appointed pursuant to the Criminal Justice Act.

2.     That the facts and statements set forth in the foregoing document are true and correct to the best of my knowledge and belief.

3.     On July 18, 2005 I spoke on the telephone with Mike Kinata in the Parole Services Division of the Guam Department of Corrections. Mr. Kinata supervises Joseph Aguon on parole.

4.     Mr. Kinata reports that Mr. Aguon is doing well on parole and has consistently tested negative for the use of illegal drugs.

5.     On July 18, 2005 I spoke on the telephone with David Cruz at the San Vicente Church, where he supervises Mr. Aguon's community service.

6.     Mr. Cruz reports that Mr. Aguon "is a great asset to the Church." Mr. Aguon works at the church from 8:30 a.m. to 3:30 p.m. six days a week. He attends to the general maintenance of the church, as well as preparations for mass and funerals. Mr. Cruz is

very grateful to have Mr. Aguon at the church. Mr. Aguon is very good at his work, is prompt, and respectful.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.

DATED: Mongmong, Guam, July 18, 2005.

KIM SAVO
Attorney for Defendant
JOSEPH CARLOS TAITANO AGUON

2

**1. Complaint No.** 01-07086

| 2. Check | | 3. Beat | 4. Crime/Offense | 5. Alcohol/Drug Related |
|---|---|---|---|---|
| ☐ Person   ☒ Property | | A26 | CONFISCATED CONTROBAND | ☒ Yes   ☐ No |
| ☐ Incident   ☐ Missing Person | | | | |

| 6. Complainant/Victim's Name | a. Sex | b. Race | c. D.O.B | d. Address | e. Res. Phone |
|---|---|---|---|---|---|
| GUAM POLICE DEPT. | — | N/A/-1 | | SINSOT BLVD. / TIYAN, MAITO | 4728911 |

| 7. Reporting Person's Name | a. Sex | b. Race | c. D.O.B | d. Address | e. Res. Phone |
|---|---|---|---|---|---|
| PO² AB QUITVELA | M | CHA | 9/5/69 | CARE OFI GPD | 4728911 |

| 8. Comp. or Victim (Employed or School Attended) | a. Occupation | b. Address | c. Bus. Phone |
|---|---|---|---|
| GUAM POLICE DEPT. | POLICE OFCR. 2 | AGAT PRECINCT | 4758628 |

| 9. Date & Time Occurred | 10. Date & Time Reported | 11. Location of Offense (Address) | 12. Type of Premise |
|---|---|---|---|
| 9:00AM, 5-8-01 | 5-8-01, 9:00AM | ROUTE 2, AGAT | ROADWAY |

| 13. Vehicle | Date & Time | License No. | State | Year | Make | Body | Model | Clr. | Yr. | Identifying Characteristics of Veh. |
|---|---|---|---|---|---|---|---|---|---|---|
| ☐ APB ☐ SUSPECT | | | | | N/A | | | | | |
| a. | | | | | | | | | | |
| b. | | | | | | | | | | |

| 14. Source of Call | a. Date & Time | 15. Date & Time Arrived | a. Location |
|---|---|---|---|
| OBSERVATION MADE | 5-8-01, 8:00AM | 5-8-01, 9:05AM | ROUTE 2, AGAT |

| 16. Date & Time Complainant interviewed | 17. Location of Interview | 18. Written Statements? |
|---|---|---|
| 9:05AM, 5-8-01 | ROUTE 2, AGAT | ☐ Yes   ☒ No |

CODE: V - Victim ( Other than in Block No. 1) show
Sex; Race, Age: W-Witness: Parent or G-Guardian

| 19. Type of Property Taken | 20. Total Loss Value |
|---|---|
| NONE | — N/A — |

| 21. Name | Code | Address | | Res. Phone | Bus. Phone |
|---|---|---|---|---|---|
| a. | | | | | |
| b. | | | | | |
| c. | | | | | |
| d. | | | | | |

RECEIVED
MAY 0 9 2001
GPD
RECORDS SECTION

| 22. Weapons or Means Used | 23. Method Used | 24. Nature of Injuries & Location | 25. Victim Hospitalized | 26. Transported |
|---|---|---|---|---|
| CONT. SUBSTANCE / POSSESSION | | NONE | ☐ Yes ☒ No | — N/A — |

| 27. Name of Missing Person or Suspect | Address | Sex | Race | Age | Ht. | Wt. | Eyes | Hair | Complexion | Clothing | Identifying Characteristics |
|---|---|---|---|---|---|---|---|---|---|---|---|
| a. JOSEPH T. AGUON | AGAT | M | CHA | 49 | 5'4" | 140 | BRN | BLK | MED. | BLACK SHORTS BLACK SHIRT | |
| b. ANDREW E. CUNDIFF | AGAT | M | CHA | 49 | 5'9" | 280 | BLK | BLK | LIGHT | BROWN SHIRT BLUE SHORTS | |
| c. LOURDES T. AGUON | 121 ILOILO CIRC. AGAT | F | CHA | 45 | 5'1" | 110 | BROWN | LIGHT | | BROWN BLOUSE BLUE JEANS | |
| d. | | | | | | | | | | | |

| 28. Possible Cause of Absence | 29. If Missing Person has run away | | |
|---|---|---|---|
| — N/ | | | |

| 30. Possible Destination | 31. Physical Condition | | Condition |
|---|---|---|---|
| | — N/A — | | |

GUAM POLICE DEPARTMENT
CONFIDENTIAL

GPD 1 (Rev.) Apr 1991    36-976

# OFFENSE REPORT FORM (Continued)

| 33. Location of Victim's Property | 34. Type of Document | 35. Date & No. of Document | 36. Firm Name of Check |
|---|---|---|---|
| | | | |

| 37. Made Payable to & Amount | 38. Signature on face | 39. Reason not Honored |
|---|---|---|
| | | |

| 40. Crime Tech. I.D. Number | 41. Date & Time Arrived | 42. Crime Scene Processed |
|---|---|---|
| | | ☐ Yes  ☐ No |

| 43. Complainant's Signature | 44. Date & Time | 45. Status (Check One) |
|---|---|---|
| | | ☒ Open  ☐ Police Service  ☐ Suspended  ☐ Closed |

| 46. Reporting Officer FOR AB BUTURUA No. | 47. Second Officer No. | 48. UCR Disposition |
|---|---|---|

**GUAM POLICE DEPARTMENT CONFIDENTIAL**

| 49. Copy Forwarded To: | ☐ A.G. Office | ☐ Detective | 50. Approving Supervisor? |
|---|---|---|---|
| ☐ Traffic  ☐ Youth  ☐ Narcotic  ☒ Other  VSCTF | | | |

## Describe Incident

OBSERVATION MADE:                                        9:00AM / 5-8-01

AFTER ASSISTING OFCR. PG CORPUZ, IN THE CHECK OF A SUSPECT REALS, RELATIVE TO AN ASSAULT CASE (NO. CY-07001) AT A HOME LOCATED ON ASAT UMATAC ROAD, I PROCEEDED TO MY PATROL VEHICLE. I THEN OBSERVED A VEHICLE, LATER IDENTIFIED AS: -1993 TOYOTA COROLLA /LP: YON 1103 TRAVELING SOUTH (TOWARDS MS) ON THE ASAT / UMATAC ROAD. THE SAID VEHICLE ABRUPTLY SLOWED TO A STOP ON THE ROADSIDE, IN FRONT OF A RESIDENCE. I OBSERVED THE VEHICLE FOR SEVERAL MINUTES AND NOTED NONE OF THE OCCUPANTS EXIT. I DROVE MY PATROL VEHICLE AWAY FROM THE AREA, TOWARDS, UMATAC, WHEN I NOTED THAT THE VEHICLE WAS EXECUTING A U-TURN, AWAY FROM THE HOME, WITHOUT ANYONE HAVING EXIT SAME, AND WAS PROCEEDING TOWARDS THE ASAT VILLAGE. I EXECUTED A U-TURN AND PROCEEDED TO FOLLOW THE VEHICLE, WHICH ACCELERATED TO APPROXIMATELY 40 MILES, PER HOUR. I THEN ACTIVATED MY EMERGENCY LIGHTS AND SIREN AND STOPPED THE VEHICLE.

VEHICLE APPROACHED:                                      9:05AM / 5-8-01

I APPROACHED THE SUBJECT VEHICLE AND INFORMED THEM OF THE REASON FOR THE STOP, AND REQUESTED THE DRIVERS LICENSE OF THE OPERATOR AND THE VEHICLES REGISTRATION.

| 1. Complainant, Driver, Victim, or Arrestee | 2. Arrest No. | 3. Complaint No. |
|---|---|---|
| APO | | 01 07086 |

| ☑ Form Used As Continuation Sheet For Current Report | ☐ Form Used to Report Follow up Investigation or Supplemental Information |
|---|---|

| 4. Extra Copies | 5. Page No. 2 | 6. Traffic Citation No. | 9. Correct Offense or Incident Classification | Changed ☐ Yes |
|---|---|---|---|---|

| 7. Kind of Report Continued | | | Follow up or Supplemental Or Persecution | 10. Multiple Clear-up? |
|---|---|---|---|---|
| ☑ Offense | ☐ Traffic Accident | ☐ Arrest | | ☐ Yes (List Other Complaint Nos. In Narrative) ☐ No |

8. Offense, Charge or Incident on Original Report
CONF. CONTRABAND

11. Value of Property Recovered
$

12. Instructions for Followup Or Supplemental Usage

Under narrative, record your activity and all developments. In the case subsequent to last report. Describe and record value of any property recovered, names and arrest numbers of any persons arrested. Explain any offense classification change. Clearly show disposition of recovered property, and inventory No. Recommend to supervisor case status and to reviewer UCR disposition. Indicate "Item Number Continued" at left, if any.

Item No.

THE VEHICLES OPERATOR, IDENTIFIED AS:

- ANDREW CUNDIFF (PBL 27b)

GAVE ME THE SAID DOCUMENTS, AS I NOTED TWO OTHER OCCUPANTS IN THE VEHICLE, LATER IDENTIFIED AS:

- LOURDES T. ABUON (FRONT PASSENGER)

- JOSEPH T. ABUON (RIGHT REAR PASS.)

I INQUIRED IF THEY WERE VISITING ANYONE IN THE HOME THEY PARKED IN FRONT OF. MS. ABUON, STATED THAT SHE KNEW A BERNIE, THAT STAYED THERE. I ASKED WHY IT WAS THAT NO ONE EXIT THE VEHICLE, AND I RECEIVED NO RESPONSE. I ASKED MR. CUNDIFF IF I COULD SEARCH THE SAID VEHICLE FOR ANY FIREARMS, WHEREBY HE STATED "YES". I REQUESTED ALL THE OCCUPANTS TO EXIT THE VEHICLE AND THEY DID SO.

OBSERVATION MADE:

AFTER THE OCCUPANTS EXIT THE SAID VEHICLE, THROUGH THE DRIVERS DOOR

| 30. Reporting Officer P02 ARUDITVGUA | No. 18 | 31. Status (Check One) Open | 33. Date/Time Typed | Reproduced No. |
|---|---|---|---|---|
| Second Officer | No. | 32. Supervisor Approving | Suspended Closed | 34. Unit Referred 35. UCR Disposition |
| | | | 36. No. | No. |

GUAM POLICE DEPARTMENT
CONFIDENTIAL

| 1. Complainant, Driver, Victim, or Arrestee | | 2. Arrest No. | 3. Complaint No. |
|---|---|---|---|
| GPD | | | 07-0708 |

☑ Form Used As Continuation Sheet For Current Report ☐ Form Used to Report Follow up Investigation or Supplemental Information

| 4. Extra Copies | 5. Page No. 3 | 6. Traffic Citation No. | 9. Correct Offense or Incident Classification | Changed ☐ Yes |
|---|---|---|---|---|

| 7. Kind of Report Continued | | Follow up or Supplemental Or Persecution | 10. Multiple Clear-up? | |
|---|---|---|---|---|
| ☑ Offense ☐ Traffic Accident ☐ Arrest | | | ☐ Yes (List Other Complaint Nos. in Narrative) | ☐ No |

8. Offense, Charge or Incident on Original Report

CONF. CONSTROBAND

11. Value of Property Recovered
$

| 12. Instructions for Followup Or Supplemental Usage | Under narrative, record your activity and all developments. In the case subsequent to last report. Describe and record value of any property recovered, names and arrest numbers of any persons arrested. Explain any offense classification change. Clearly show disposition of recovered property, and inventory No. Recommend to supervisor case status and to reviewer UCR disposition. Indicate "Item Number Continued" at left, if any. |
|---|---|

Item No.

WINDOW, I NOTED WHAT APPEARED TO BE A CLEAR STRAW WHICH WAS SEALED AT ONE END AND CUT AT AN ANGLE ON THE OTHER LAYING ON THE FLOOR IN FRONT OF THE FRONT PASSENGERS SEAT. I LOOKED CLOSER INTO THE VEHICLE, AND NOTED RESIDUE IN THE STRAW WHICH I SUSPECTED TO BE "ICE". I SUBSEQUENTLY INSTRUCTED THE THREE SUBJECTS TO PLACE THIER HANDS ON THE TRUNK OF THE VEHICLE, AND AS THEY WERE DOING SO, I NOTED MR. AGUON, TO HAVE TOSSED A GLASS TUBE INTO THE TALL GRASS ON THE ROADSIDE, BEFORE PLACING HIS HANDS ON THE TRUNK LID. I THEN RADIOED FOR ASSISTANCE. OFCRS. JA GUERRERO AND FG CORUZ, ARRIVED SHORTLY THEREAFTER. I THEN CONDUCTED A MORE THOROUGH SEARCH OF THE VEHICLE, WHEREBY I FOUND SUSPECTED MARIJUANA, CIGARETTES AND SEEDS IN A BLACK COLORED POUCH, ALONG WITH THREE GLASS TUBES AND MISCELLANEOUS WATER ATTACHMENTS

| 30. Reporting Officer | No. 152 | 31. Status (Check One) Open | 33. Date/Time Typed | Reproduced No. |
|---|---|---|---|---|
| PO2 A. SANTUSBA | | | | |
| Second Officer | No. | 32. Supervisor Approving | No. | 36. |

GUAM POLICE DEPARTMENT
CONFIDENTIAL

| | 1. Complainant, Driver, Victim, or Arrestee | 2. Arrest No. | 3. Complaint No. |
|---|---|---|---|
| | GPD | | 01·07086 |

| ☒ Form Used As Continuation Sheet For Current Report | | | ☐ Form Used to Report Follow up Investigation or Supplemental Information | |
|---|---|---|---|---|
| 4. Extra Copies | 5. Page No. 4 | 6. Traffic Citation No. | 9. Correct Offense or Incident Classification | Changed ☐ Yes |
| 7. Kind of Report Continued ☒ Offense ☐ Traffic Accident ☐ Arrest | | Follow up or Supplemental Or Persecution | 10. Multiple Clear-up? ☐ Yes (List Other Complaint Nos. In Narrative) | ☐ No |
| 8. Offense, Charge or Incident on Original Report CONF. CONTROBAND | | | 11. Value of Property Recovered $ | |

| 12. Instructions for Followup Or Supplemental Usage | Under narrative, record your activity and all developments. In the case subsequent to last report. Describe and record value of any property recovered, names and arrest numbers of any persons arrested. Explain any offense classification change. Clearly show disposition of recovered property, and inventory No. Recommend to supervisor case status and to reviewer UCR disposition. Indicate "Item Number Continued" at left, if any. |
|---|---|

| Item No. | |
|---|---|
| | COMMONLY USED IN THE ABUSE OF DRUGS. I FOUND THIS POUCH ON THE RIGHT REAR SEAT. I THEN NOTED ANOTHER POUCH LABELED "ESPRIT" BESIDE THE BLACK ONE AND IN IT I FOUND A BROWN PILL CONTAINER CONTAINING NUMEROUS PILLS LABELED "PROZAC". I NOTED SEVERAL CUT AND SEALED STRAWS, CLEAR ZIPLOCK BAGS WITH WHAT APPEARED TO BE SUSPECTED ICE RESIDUE, ALSO IN THE ESPRIT POUCH. I ALSO NOTED SURGICAL CLAMPS AND SCISSORS, WIRE, LIGHTER ATTACHMENTS, A SLENDER BUTANE TORCH IN THE SAME POUCH. ON THE FLOOR IN FRONT OF THE RIGHT REAR PASSENGER I FOUND TWO TORCH LIGHTERS. I THEN DISCOVERED TWO GLASS TUBES FASHIONED INTO ICE PIPES, SLIGHTLY UNDER THE REAR PORTION OF THE SEAT CUSHION (RIGHT REAR SEAT), AND THAT THERE APPEARED TO BE ICE RESIDUE IN SAME. I ALSO FOUND MISCELLANEOUS JEWELRY ITEMS UNDER THE SAME CUSHION. |

GUAM POLICE DEPARTMENT
CONFIDENTIAL

| 0. Reporting Officer PO2 A.P. QUITUGUA | No. | 31. Status (Check One) OPEN | Suspended Closed | 34. Unit Referred To: | Reproduced No. |
|---|---|---|---|---|---|
| Second Officer | No. | 32. Supervisor Approving | No. | 36. Reviewer | 35. UCR Disposition No. |

# SUPPLEMENT REPORT - GPD-6

| | 1. Complainant, Driver, Victim, or Arrestee GPD | 2. Arrest No. | 3. Complaint No. 0/0704 |
|---|---|---|---|

| ☒ Form Used As Continuation Sheet For Current Report | | ☐ Form Used to Report Follow up Investigation or Supplemental Information | |
|---|---|---|---|

| 4. Extra Copies | 5. Page No. 6 | 6. Traffic Citation No. | 9. Correct Offense or Incident Classification | Changed ☐ Yes |

| 7. Kind of Report Continued | | | Follow up or Supplemental Or Persecution | 10. Multiple Clear-up? |
|---|---|---|---|---|
| ☐ Offense | ☐ Traffic Accident | ☐ Arrest | | ☐ Yes (List Other Complaint Nos. in Narrative) ☐ No |

8. Offense, Charge or Incident on Original Report
CONF. CONTROBAND

11. Value of Property Recovered $

12. Instructions for Followup Or Supplemental Usage — Under narrative, record your activity and all developments. In the case subsequent to last report. Describe and record value of any property recovered, names and arrest numbers of any persons arrested. Explain any offense classification change. Clearly show disposition of recovered property, and inventory No. Recommend to supervisor case status and to reviewer UCR disposition. Indicate "Item Number Continued" at left, if any.

**Item No.**

VEHICLE IMPOUNDED:                    8:10 AM, 5-8-01

OFCR. PG CORPUZ, IMPOUNDED THE SUBJECT VEHICLE, RELATIVE TO THIS INVESTIGATION, AT WHICH TIME I ASSISTED HIM IN THE INVENTORY OF SAME.

FOUND FIREARM:                    8:12AM, 5-8-01

I DISCOVERED A PURPLE COLORED BAG ON TOP OF THE RIGHT FRONT FENDER WELL, UNDER THE HOOD IN THE ENGINE COMPARTMENT AREA. INSIDE THE BAG I FOUND A FIREARM IDENTIFIED AS:

- RUGER PISTOL / COLOR: BLACK SERIAL NO.: 302-25074 - AND
- TWO MAGAZINES LOADED WITH AT LEAST 10 ROUNDS EACH.
- A BOX WITH 27 CARTRIDGES

CONFISCATED PROPERTY:                    8:15AM, 5-8-01

I CONFISCATED ALL THE SAID PROPERTY, VIA THE EVIDENCES / PROPERTY

| 0. Reporting Officer No. | 31. Status (Check One) ☒ Open ☐ Closed | 33. Date/Time Typed | Reproduced No. |
|---|---|---|---|
| Second Officer No. | 32. Supervisor Approving No. | 36. Reviewer No. | UCR Disposition No. |

GUAM POLICE DEPARTMENT
CONFIDENTIAL

# SUPPLEMENT REPORT
## GPD-6

| 1. Complainant, Driver, Victim, or Arrestee | 2. Arrest No. | 3. Complaint No. |
|---|---|---|
| GPD | | 01-07086 |

☐ Form Used As Continuation Sheet For Current Report

☐ Form Used to Report Follow up Investigation or Supplemental Information

| 4. Extra Copies | 5. Page No. | 6. Traffic Citation No. | 9. Correct Offense or Incident Classification | Changed ☐ Yes |
|---|---|---|---|---|

| 7. Kind of Report Continued | | Follow up or Supplemental Or Persecution | 10. Multiple Clear-up? |
|---|---|---|---|
| ☒ Offense ☐ Traffic Accident ☐ Arrest | | | ☐ Yes (List Other Complaint Nos. in Narrative) ☐ No |

| 8. Offense, Charge or Incident on Original Report | 11. Value of Property Recovered |
|---|---|
| CONF. CONTRABAND | $ |

| 12. Instructions for Followup Or Supplemental Usage | Under narrative, record your activity and all developments. In the case subsequent to last report. Describe and record value of any property recovered, names and arrest numbers of all persons arrested. Explain any offense classification change. Clearly show disposition of recovered property, and inventory No. Recommend to supervisor case status and to reviewer UCR disposition. Indicate "Item Number Continued" at left, if any. |
|---|---|

| Item No. | |
|---|---|
| | CUSTODY RECEIPTS ATTACHED HEREWITH. THE CONTRABAND WAS CONFISCATED FOR ANALYSIS TO DETERMINE THE PRESENCE OF ANY CONTROLLED SUBSTANCE. THE FIREARM AND OTHER CONTENTS OF THE BAG (PURPLE COLORED) WAS CONFISCATED FOR ANALYSIS TO DETERMINE IF IDENTIFIABLE LATENT PRINTS EXIST, AND IF SO, DO THEY MATCH ANY OF THE SUBJECT THREE INDIVIDUALS. I CONFISCATED A $100.00 BILL, FROM MS. AGUON, FOR EVIDENCE AND SAFEKEEPING. |
| | |
| | INFORMATION: |
| | MY SUPERVISOR, PO3 JA GUERRERO, ARRANGED FOR THE SUBJECT THREE INDIVIDUALS TO BE TRANSPORTED TO THE AGAT PRECINCT, AND RELEASED TO OFFICERS IN THE VIOLENT STREET CRIMES TASK FORCE, FOR THEIR FOLLOW-UP INVESTIGATION. IT IS NOTEWORTHY TO MENTION THAT THE CRIME LAB TECHNICIAN, WAS NOT AVAILABLE TO PHOTOGRAPH THE CONTRABAND |

| 30. Reporting Officer | No. | 31. Status (Check One) | 33. Date/Time Typed | Reproduced No. |
|---|---|---|---|---|
| PO2 | | Open | | |
| Second Officer | No. | 32. Supervisor Approving | No. | 36. Reviewer No. |

GUAM POLICE DEPARTMENT

# SUPPLEMENT REPORT
## GPD-6

| | 1. Complainant, Driver, Victim, or Arrestee | 2. Arrest No. | 3. Complaint No. |
|---|---|---|---|
| | GPD | | 01·07086 |

| ☑ Form Used As Continuation Sheet For Current Report | ☐ Form Used to Report Follow up Investigation or Supplemental Information |
|---|---|

| 4. Extra Copies | 5. Page No. 7 | 6. Traffic Citation No. | 9. Correct Offense or Incident Classification | Changed ☐ Yes |
|---|---|---|---|---|

| 7. Kind of Report Continued | | | Follow up or Supplemental Or Persecution | 10. Multiple Clear-up? | |
|---|---|---|---|---|---|
| ☑ Offense | ☐ Traffic Accident | ☐ Arrest | | ☐ Yes (List Other Complaint Nos. in Narrative) | ☐ No |

| 8. Offense, Charge or Incident on Original Report | 11. Value of Property Recovered |
|---|---|
| CONF. CONTROBAND | $ |

| 12. Instructions for Followup Or Supplemental Usage | Under narrative, record your activity and all developments. In the case subsequent to last report. Describe and record value of any property recovered, names and arrest numbers of any persons arrested. Explain any offense classification change. Clearly show disposition of recovered property, and inventory No. Recommend to supervisor case status and to reviewer UCR disposition. Indicate "Item Number Continued" at left, if any. |
|---|---|

| Item No. | |
|---|---|
| | AND FIREARM IN THE VEHICLE, AT THIS POINT IN TIME. |
| | |
| | RECOMMENDATION: |
| | I RECOMMEND THAT THIS CASE REMAIN OPEN, AND FORWARDED TO THE VIOLENT STREET CRIMES TASK FORCE FOR THIER INFORMATION AND FOLLOW·UP INVESTIGATION. |

| | 33. Date/Time Typed | Reproduced No. |
|---|---|---|
| 30. Reporting Officer No. | 31. Status (Check One) Open | |
| Second Officer No. | 32. Supervisor Approving | 34. Unit Referred To: | 35. UCR Disposition |
| | | Suspended Closed | |
| | | 36. Reviewer No. | |

GRASS POLICE DEPARTMENT
CONFIDENTIAL

KTO - 07086

**Place Statement Taken:** AGAT PRECINCT  **Police Case Number:** 400.10771

**Name:** JOSEPH TAITANO AGUON  **Nationality:** GUAMANIAN  **Time:** 10:55 AM  **Date:** 5-8-01

**Address:** YONA, MANENGON 1  **DOB:** 11-29-45  **Home Telephone Number:** 789-4985

**CI/ID/SER: SS Number:** 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  **Occupation:** RETIRED GOV'T GUAM  (GPA)

**Employed By:** _____  **Business Telephone No.:** _____

---

**AFTER BEING ADVISED AND UNDERSTANDING MY CONSTITUTIONAL RIGHTS, I AM GIVING THE FOLLOWING STATEMENT FREELY AND VOLUNTARILY.**

I STARTED THIS MORNING BY ASKING MY FRIEND AND SISTER TO FIND A SOURCE FOR A BUY OF $50.00 PLATE OF ICE. SO WE STARTED UP TOWARD UMATAC (NOT SURE) (LOURDES) AND STOPED AT BILL SLMA RESEDENTS. MY SISTER WENT IN BUT BILL WAS SLEEPING SHE SAID. THEN WE WENT ACROSS THE STREET TO CHECK THEN IF THEY HAVE BUT NO ANSWER. THEN WE STARTED DOWN TOWARDS AGAT (OFFICERS) WHEN WE GOT PULL OVER. WHEN WE GOT PULL OVER THEY FOUND SOME GLAS AND STRAWS FROM

**THE ABOVE IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.**

**WITNESS(ES)** _____  TFO TE CERVEZA #64

**SIGNATURE:** _____

**WITNESS(ES)** _____  **TIME:** 11:20 AM  **DATE:** 5-8-01

**TIME:** 11:30 AM  **DATE:** 5/8/01

SUBSCRIBED AND SWORN TO BEFORE ME THIS _____ DAY OF _____ 20 ___

NOTARY PUBLIC IN AND FOR THE TERRITORY OF GUAM

## GUAM POLICE DEPARTMENT
## CONFIDENTIAL

THE DRUG SUBSTANCE. ALSO THEY FOUND A GUN UNDER
THE FRONT HOOD WHICH I SWAP FOR THREE $50.00 PLATE FROM A
MAN NAME DANNY SABLAN. FROM MONMONG ABOUT A
YEAR AGO. · AND THE STATEMENT

THE ABOVE IS STATEMENT CONSISTING OF 2 OF 2 PAGES IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.

WITNESS(ES) _____ SIGNATURE: _____
    TPO T. CRUZ 564

WITNESS(ES) _____ TIME: 11:29 AM DATE: 5-8.01

TIME: 11:30 AM    DATE: 5/8/01

SUBSCRIBED AND SWORN TO BEFORE ME THIS _____ DAY OF _____ 20 ___

GUAM POLICE DEPARTMENT
CONFIDENTIAL

NOTARY PUBLIC IN AND FOR THE TERRITORY OF GUAM

GPD8
Rev. 2/95

# GUAM POLICE DEPARTMENT
## ARREST RECORD

CASE NO. KY 01-07086
KY 00-10771

PERSON ARRESTED __JOSEPH TAITANO AGUON__ ALIAS _____

ADDRESS __#155 J. AGUON ST. YONA__ BIRTHDATE __11.29.51__ SSN __586.07.0207__

AGE __49__ RACE __CHUA.__ SEX __MALE__ HT __5'4"__ EYES __BROWN__ HAIR __BLACK__

OCCU/EMP. __RETIRED__ HOME ADDRESS __#155 J. AGUON ST. YONA__

MILITARY ☐ RANK ___N/A___ Branch of Service ___N/A___ Base Assigned ___N/A___
CIVILIAN ☑

ARRESTED BY __TPO TF CEPEDA__ TIME OF ARREST __4:50AM__ PLACE OF ARREST __AGUON RESIDENCE__

DATE OF ARREST __MAY 8, 2001__ CITIZEN __U.S.__ NON-CITIZEN _____

CHARGE(S) __POSSESSION OF A SCHEDULED II CONTROLLED SUBSTANCE (ICE),__
__POSSESSION OF A SCHEDULED I CONTROLLED SUBSTANCE (MARIJUANA)__
__POSS. OF A STOLEN FIREARM; POSS. OF A FIREARM W/OUT A VALID F/A I.D.__
__POSS. OF A CONCEALED FIREARM__

DEPARTMENT DISPOSITION __BOOKED AND CONFINED__

ARRESTING OFFICER _____ #564
__TPO TF CEPEDA__

PROCESSING OFFICER _____

GUAM POLICE DEPARTMENT
CONFIDENTIAL

RECEIVED
MAY 09 2001
GPD
RECORDS SECTION

Rev. 3/90

RECEIVED
9:30 a.m.
NOV 07 2001

BERMAN O'CONNOR
RYAN & SHEETY

RECEIVED
2:16 p.m.
OCT 16 2001

Law offices of
BERMAN O'CONNOR & MA

**IN THE SUPERIOR COURT OF GUAM**

ATTORNEY GENERAL'S OFFICE - PROSECUTION DIVISION
2-200E Judicial Center Building
120 West O'Brien Drive
Hagåtña, Guam 96910
Tel: (671) 475-3406 / Fax: (671) 477-3390

| | | |
|---|---|---|
| THE PEOPLE OF GUAM | ) | CRIMINAL CASE NO. **CF431-01** |
| vs. | ) | GPD REPORT NO. 01-11746 |
| | ) | |
| **JOSEPH TAITANO AGUON,** | ) | **JUDGMENT** |
| DOB: 11-29-51 | ) | |
| SSN: 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 | ) | |
| | ) | |
| Defendant. | ) | |

On this 12th day of October, 2001, came the attorney for the
People of Guam, Assistant Attorney General **LEWIS W. LITTLEPAGE**,
and the Defendant appeared with **MARK SMITH, ESQ.**, counsel, for a
change of plea hearing, and the Defendant having moved to change
his plea of NOT GUILTY to that of GUILTY of the offense of
**POSSESSION OF A SCHEDULE II CONTROLLED SUBSTANCE (As a 3rd Degree
Felony)**, in violation of 9 GCA 67.401.2(a) and (b) (1), as
contained in the Indictment filed in this case.

The Court informed the Defendant of the effect of the plea
entered and asked him whether he insists on his plea or not.

The Defendant persisted on his plea of GUILTY of the offense
of **POSSESSION OF A SCHEDULE II CONTROLLED SUBSTANCE (As a 3rd
Degree Felony)**. The Court then addressed the Defendant personally
and found that the plea is made voluntarily with an understanding
of the nature of the charge and consequences of his plea. The
Court further found to its satisfaction that there is a factual
basis for the plea.

The Court accepts Defendant's plea of GUILTY and based on his plea, a JUDGMENT of GUILTY is hereby entered. Sentencing was held on the 12th day of October, 2001. Present at the sentencing were Assistant Attorney General **LEWIS W. LITTLEPAGE** for the People, Defendant and Defendant's counsel, **MARK SMITH, ESQ.**

**WHEREFORE, IT IS HEREBY ORDERED** that as to the offense of **POSSESSION OF A SCHEDULE II CONTROLLED SUBSTANCE (As a 3rd Degree Felony)**, the Defendant, **JOSEPH TAITANO AGUON**, is hereby sentenced as follows:

1.  That Defendant shall serve three (3) years imprisonment at the Department of Corrections, with credit for time served. Upon Defendant's release, he shall be placed under special parole for a period of three (3) years;

2.  That Defendant shall pay a fine of fifteen thousand dollars ($15,000.00), plus Court costs, to be paid to the Drug Treatment and Enforcement Fund, pursuant to 9 GCA § 80.31.1, and to be paid monthly over the parole period. Defendant shall pay no less than $50.00 per month starting at a date determined by parole. If financially unable to pay a fine, said fine may be converted to community service hours at a rate of $5.15 per hour;

3.  That Defendant shall perform one hundred fifty (150) hours of community service work at the direction of the Parole Board during the three (3) years parole period. That the Defendant shall perform no fewer than five (5) hours of community-service work each month starting at a date determined by parole. That the Defendant shall



JUDGMENT - JOSEPH TAITANO AGUON                          PAGE 3
         CF431-01/GPD Report No.

receive two (2) hours credit of community service for each one (1) hour of counseling completed by the Defendant;

4. That Defendant shall enroll and attend a drug rehabilitation program at the Department of Mental Health and Substance Abuse or any other drug rehabilitation program approved by the Superior Court; However, That during his confinement, **Defendant shall attend and successfully complete the Residential Substance Abuse Treatment (RSAT) Program at the Department of Corrections, Mangilao.** Defendant shall follow all recommendation of the counselors;

5. That Defendant shall report to the Parole Services Division within forty-eight (48) hours of his release from incarceration for intake and processing; and

6. That in addition to the standard conditions imposed by the Parole Board and the Parole Services Division, the Defendant shall comply with the conditions of parole specified in 9 GCA § 80.80, and the following conditions are recommended to the Parole Board:

A. Defendant shall attend and successfully complete any drug and/or alcohol counseling program recommended by the Court after assessment at the Department of Mental Health and Substance Abuse at no cost to the Defendant. Defendant shall diligently report within two weeks from either his release from the Department of Corrections or his

guilty plea whichever is the latter;

B. Defendant shall report to the Parole Office once per week or as recommended by that office in person, and at that time will take a weekly drug test if requested. Failure to take a weekly drug test, if requested, will be considered a violation of parole. Defendant will report to parole for his initial intake within two working days of his release from the Department of Corrections or his guilty plea, whichever is the latter;

C. Defendant shall perform one hundred fifty (150) hours of community service work at the direction of the Parole Office;

D. Defendant stipulates to forfeit any contraband and cash seized to the Guam Police Department for Drug Training, and all other non-contraband personal items will be returned to the Defendant;

E. Defendant shall not associate with any persons known to him as felons;

F. Defendant shall stay away from all firearms and other deadly weapons, and under no circumstances is he to possess, carry, transfer, or use any firearms;

G. Defendant shall forfeit his Guam Firearm Identification Card if he possesses one and shall not reapply for one in the event he does not possess one;

H.    Defendant is to surrender his passport, if any, to
      the Parole Office;

I.    Defendant shall not leave Guam without the approval
      of the Court or Parole Board, with prior notice
      being given to the Office of the Attorney General,
      Prosecution Division;

J.    Defendant shall not possess or consume any illegal
      controlled substances;

K.    Defendant shall submit to random drug testing under
      the supervision of the Parole Office;

L.    Defendant shall not consume any alcoholic
      beverages;

M.    Defendant shall submit to random alcohol testing
      under the supervision of the Parole Office;

N.    Defendant shall permit Parole Officers or police
      officers to search his person, automobile, and
      residence or room where he is residing, for
      firearms, alcohol, and illegal controlled
      substances at any time such a search is requested.
      Failure to allow such a search will be considered a
      violation of parole. Defendant and his attorney
      stipulate that a presumptive positive field test
      for drugs, including the Roche Cup or On Tract Test
      Systems, will be considered conclusive evidence of
      a parole violation;

O.    Defendant shall make good faith efforts to obtain
      and maintain legal employment or continue in

school;

P.   Defendant shall obey all federal and local laws of Guam; and

Q.   Defendant shall abide by any other reasonable conditions imposed by the Court or the Parole Board.

7.   The People will not move to revoke Defendant's current probation, in Criminal Cases No. CF846-96, CF913-98, and CF914-98.

8.   Failure of the Defendant to follow all of his conditions of parole will result in a hearing to revoke parole at which time the Court may impose the *maximum* penalty allowable under the statute charged.

A hearing for ***FURTHER PROCEEDINGS*** will be held on the December 13, 2001, at 4:00 p.m.

**SO ORDERED, *NUNC PRO TUNC*,** on the 12th day of October, 2001, this _____ day of _____NOV 05 2001_____, 2001.

Original Signed By:
Hon. Alberto C. Lamorena III

HONORABLE ALBERTO C. LAMORENA, III
PRESIDING JUDGE
SUPERIOR COURT OF GUAM

Submitted by:

LEWIS W. LITTLEPAGE
Assistant Attorney General

Dated: October 12, 2001

Approved as to form:

MARK SMITH, ESQ.
Attorney for Defendant

Dated: _____10/31/01_____

DEPA~~ ~~ ́ ́ OF THE TREASURY
BUREAU OF A ́~~ ~~ ́OL, TOBACCO AND FIREARMS
# REPORT OF INVESTIGATION

| ADDRESSED TO:<br>Special Agent in Charge<br>Seattle Field Division | MONITORED INVESTIGATION INFORMATION:<br>Seattle Field Division<br>FY-01<br>Report 001 |
|---|---|

**TITLE OF INVESTIGATION:**
AGUON, Joseph Taitano

| CASE NUMBER:<br>787020-01-0025 | REPORT NUMBER:<br>1 |
|---|---|

**TYPE OF REPORT:** *(Check Applicable Boxes)*

| X | REPORT OF INVESTIGATION | | COLLATERAL REPLY |
|---|---|---|---|
| | REPORT OF INTELLIGENCE | | |

| SUBMITTED BY *(Name)*<br>Kenneth C. Torres | SUBMITTED BY *(Title and Office)*<br>Special Agent, Guam Field Office | SUBMITTED BY *(Date)*<br>05/21/2001 |
|---|---|---|
| REVIEWED BY *(Name)*<br>Terry F. Alverson | REVIEWED BY *(Title and Office)*<br>Resident Agent in Charge, Guam Field Office | REVIEWED BY *(Date)*<br>5/12/01 |
| APPROVED BY *(Name)*<br>Carson W. Carroll | APPROVED BY *(Title and Office)*<br>(For)<br>Special Agent in Charge, Seattle Field Division | APPROVED BY *(Date)*<br>5/14/01 |

## DESCRIPTION OF ACTIVITY:

Arrest of Joseph Taitano AGUON, a convicted felon, and a narcotics user.

## SYNOPSIS:

On May 8, 2001, Guam Police Department (GPD) Officer A.B. Quitugua arrested Joseph Taitano AGUON for possession of a stolen firearm, suspected crystal methamphetamine, "ice," and suspected marijuana.

## NARRATIVE:

1. On May 8, 2001, at approximately 8:05 a.m., GPD Officer A.B. Quitugua #178, conducted a vehicle traffic stop on a Toyota Corolla, bearing Guam license plate YON1103. Joseph Taitano AGUON, Pacific Islander/Chamorro male, DOB: November 29, 1951, was one of two passengers.

2. Initially, Officer Quitugua noticed the aforementioned vehicle make a complete stop on the shoulder of the road, off Route 1, in the Agat/Umatac area of Guam. The vehicle made the stop in front of a residence, but Officer Quitugua did not see anyone exit the vehicle. For several minutes, Officer Quitugua observed, but did not see any activity until the vehicle made a "U-turn" and proceeded in the northerly direction, to which Officer Quitugua followed. Officer Quitugua noted that the vehicle was travelling above the posted speed limit, and effected a traffic stop.

| ADDRESSED TO:<br>Special Agent in Charge<br>Seattle Field Division | MONITORED INVESTIGATION INFORMATION:<br>Seattle Field Division<br>FY-01<br>Report 001 |
|---|---|

| TITLE OF INVESTIGATION:<br>AGUON, Joseph Taitano | |
|---|---|

| CASE NUMBER:<br>787020-01-0025 | REPORT NUMBER:<br>1 |
|---|---|

3.  Officer Quitugua asked the occupants of the vehicle their purpose for stopping in front of the residence. Lourdes Taitano Aguon told Officer Quitugua that she knew of a "Bernie" that stayed at that residence. Officer Quitugua then asked, "why no one exited the vehicle?" Officer Quitugua did not receive a response from the occupants. Officer Quitugua asked for and obtained verbal consent from the driver, Andrew Cundiff, to search the vehicle.

4.  As a result of the search, suspected crystal methamphetamine and drug paraphernalia were discovered. Officer Quitugua arrested Andrew Cundiff, Lourdes Taitano Aguon and Joseph Taitano AGUON for possession of the suspected crystal methamphetamine.

5.  Officer P.G. Corpuz #374, and GPD Agat Precinct Field Supervisor Joseph A. Guerrero responded to assist Officer Quitugua in the inventory of the vehicle. In the processes of the inventory, Officer Quitugua found, a black, 9mm Ruger, Model 85, semi-automatic pistol, serial #302-25074, two magazines loaded with 10 rounds of ammunition cartridges in each, and a box of 27 cartridges. These items were found in the engine compartment.

6.  At about 8:25 a.m., Field Supervisor Guerrero requested a history check of the firearm through personnel at the GPD Records and ID Section. The firearms history check revealed that it was stolen (GPD Case No. 00-10771).

7.  GPD Officer T.E. Certeza #564, currently assigned to the Violent Street Crime Task Force (VSCTF), later conducted an interview of AGUON. Officer Certeza advised AGUON of his Miranda Rights, and obtained a signed waiver from AGUON.

8.  During the interview, AGUON admitted to possessing the firearm, admitted to possessing drug paraphernalia with suspected crystal methamphetamine residue, and suspected marijuana. AGUON admitted to trading 3 plates of "ice" in exchange for the firearm. In addition, AGUON admitted to smoking "ice" prior to his encounter with Officer Quitugua on the aforementioned date.

9.  Officer T.E. Certeza charged AGUON for possession of a stolen firearm, crystal methamphetamine, and marijuana.

ATTACHMENTS:
GPD Offense Report Form, GPD 1 (A.B. Quitugua, 5/8/01)
GPD Evidence/Property Custody Receipt, (A.B. Quitugua, 5/8/01) (Items 1-6)
Evidence Analysis Request, (A.B. Quitugua, 5/8/01) (Items 1-6)
GPD Evidence/Property Custody Receipt, (A.B. Quitugua, 5/8/01) (Items 7-9)
GPD Evidence/Property Custody Receipt, (A.B. Quitugua, 5/8/01) (Items 10-12)
Evidence Analysis Request, (A.B. Quitugua, 5/8/01) (Items 10-12)
GPD Evidence/Property Custody Receipt, (A.B. Quitugua, 5/8/01) (Item 13)
GPD Arrest Record & Report, GPD 7 (T.E. Certeza)
VSCTF Interview of Joseph Taitano AGUON, (T.E. Certeza, 5/8/01)
GPD Waiver of Rights, GPD 9; Statement Form, GPD 8 (AGUON, 5/8/01)

| ADDRESSED TO:<br>Special Agent in Charge<br>Seattle Field Division | MONITORED INVESTIGATION INFORMATION:<br>Seattle Field Division<br>FY-02<br>Report 002 | |
|---|---|---|
| TITLE OF INVESTIGATION:<br>AGUON, Joseph Taitano | | |
| CASE NUMBER:<br>787020-01-0025 | REPORT NUMBER:<br>2 | |

**TYPE OF REPORT:** *(Check Applicable Boxes)*

| X | REPORT OF INVESTIGATION | | COLLATERAL REPLY |
|---|---|---|---|
| | REPORT OF INTELLIGENCE | | |

| SUBMITTED BY *(Name)*<br>Mim B. Shea | SUBMITTED BY *(Title and Office)*<br>Special Agent, Guam Field Office | SUBMITTED BY *(Date)*<br>07/29/2002 |
|---|---|---|
| REVIEWED BY *(Name)*<br>Terry F. Alverson | REVIEWED BY *(Title and Office)*<br>Resident Agent in Charge, Guam Field Office | REVIEWED BY *(Date)*<br>8/2/02 |
| APPROVED BY *(Name)*<br>Carson W. Carroll | APPROVED BY *(Title and Office)*<br>Special Agent in Charge, Seattle Field Division | APPROVED BY *(Date)*<br>8/2/02 |

## DESCRIPTION OF ACTIVITY:

Interstate nexus determination

## SYNOPSIS:

Determination of interstate nexus on a weapon recovered from JOSEPH CARLOS TAITANO AGUON.

## NARRATIVE:

1. On May 08, 2001, members of the Guam Police Department arrested JOSEPH CARLOS TAITANO AGUON for possession of a stolen firearm and possession of narcotics.
2. The weapon that AGUON had in his possession at the time of his arrest was a black Ruger pistol, model P85, 9mm, bearing serial number 302-25074.
3. Strum, Ruger & Co., Inc. pistols are manufactured in Prescott, Arizona. The P85 pistols were manufactured in Arizona between 1987 and 1992.
4. Special Agent Shea determined that the weapon is a firearm as defined by Gun Control Act of 1968.
5. Since the firearm was manufactured in Arizona, it would have had to have traveled in interstate commerce to be present on the island of Guam.

ATTACHMENTS:
Guam Police Department Certificate of Firearm Registration # 58914
Photographs of weapon

ATF EF 3120.2 (5-98)

## CERTIFICATE OF SERVICE

I, RENATE DOEHL, hereby certify that a true and exact copy of the foregoing

document was duly mailed and/or hand-delivered to the following on July 19, 2005:

RUSSELL C. STODDARD
First Assistant United States Attorney
Sirena Plaza
108 Hernan Cortez, Ste. 500
Hagatna, Guam 96910

Attorney for Plaintiff
UNITED STATES OF AMERICA

STEPHEN GUILLIOT
U.S. Probation Officer
U.S. Probation Office
Districts of Guam and NMI
2nd Floor, U.S. District Court

DATED: Mongmong, Guam, July 19, 2005.

RENATE DOEHL
Operations Administrator

KIM SAVO
Attorney for Defendant
JOSEPH CARLOS TAITANO AGUON